**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CATHY ROSA, STACY FELDBRANDT, and CLAIR AWAD, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BOOTS RETAIL USA INC., D/B/A NO. 7 BEAUTY,<br><br>Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Cathy Rosa, Stacy Feldbrandt, and Clair Awad ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint against Boots Retail USA Inc. d/b/a No. 7 Beauty ("Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a putative class action lawsuit on behalf of purchasers of No. 7 Biodegradable Makeup Removing Wipes and/or Biodegradable Cleansing Wipes (collectively, the "Wipes Products" or the "Wipes") against Defendant for its false and deceptive practices in the marketing and sale of its purported "biodegradable" wipes. The marketing and advertising of the Wipes Products contain misleading, unqualified representations on the front packaging that lead reasonable consumers to believe that the Wipes Products are biodegradable. An example of the Wipes Products are pictured on the proceeding page. *See* Figures 1 and 2, next page.




**Figure 1**




**Figure 2**

2. Defendant claims that the Wipes Products are "biodegradable" on the front label, capitalizing on the preference of environmentally-conscious consumers to purchase disposable products that will not persist in the environment. However, this representation is false and/or misleading because the Wipes Products will not biodegrade under a reasonably short period of time when customarily disposed of.

3. As a result of its deceptive conduct, Defendant violates state consumer protection statutes and has been unjustly enriched at the expense of consumers.

4. Plaintiffs purchased Defendant's Wipes Products, and, on behalf of themselves and similarly situated purchasers, asserts claims for violations of New York General Business Law §§ 349 and 350, and for breach of express warranty.

**PARTIES**

5. Plaintiff Cathy Rosa is a citizen of New York. She resides in Bronx County, New York. In or around October 2025, Ms. Rosa purchased one package of Defendant's Biodegradable Makeup Removing Wipes from ShopRite and/or Walgreens. When Ms. Rosa made her purchase, she believed that the Wipes were completely biodegradable based on customary usage because she saw the large "biodegradable" representation on the front packaging. Ms. Rosa saw this representation prior to, and at the time of purchase, and relied on this misleading, false, and deceptive representation in purchasing the Wipes. Ms. Rosa understood that "biodegradable" meant that the Wipes Product would break down naturally in the environment within a reasonably short period of time under customary disposal conditions, i.e., throwing them in her household garbage. But the Wipes Product Ms. Rosa purchased is not completely biodegradable under customary disposal conditions because landfills do not present the conditions necessary for biodegradation within a reasonably short period of time. The biodegradability of the Wipes

Product was material to Ms. Rosa, and had she known that Wipes would not biodegrade upon customary disposal, e.g., disposal in her household garbage, she would not have purchased the Wipes or would have paid significantly less for them.

6. Plaintiff Stacy Feldbrandt is a citizen of New York. She resides in Nassau County, New York. Ms. Feldbrandt purchased several packages of Defendant's Biodegradable Makeup Removing Wipes from Walgreens and various local pharmacies between approximately October 2024 and October 2025. When Ms. Feldbrandt made her purchases, she believed that the Wipes were completely biodegradable based on customary usage because she saw the large "biodegradable" representation on the front packaging. Ms. Feldbrandt saw this representation prior to, and at the time of purchase, and relied on this misleading, false, and deceptive representation in purchasing the Wipes. Ms. Feldbrandt understood that "biodegradable" meant that the Wipes Product would break down naturally in the environment within a reasonably short period of time under customary disposal conditions, i.e., throwing them in her household garbage. But the Wipes Products Ms. Feldbrandt purchased are not completely biodegradable under customary disposal conditions because landfills do not present the conditions necessary for biodegradation within a reasonably short period of time. The biodegradability of the Wipes Products was material to Ms. Feldbrandt, and had she known that the Wipes would not biodegrade upon customary disposal, e.g., disposal in her household garbage, she would not have purchased the Wipes or would have paid significantly less for them.

7. Plaintiff Clair Awad is a citizen of New York. She resides in Nassau County, New York. In December 2025, Ms. Awad purchased one package of Defendant's Biodegradable Cleansing Wipes from Amazon.com. When Ms. Awad made her purchase, she believed that the Wipes were completely biodegradable based on customary usage because she saw the large

"biodegradable" representation on the front packaging. Ms. Awad saw this representation prior to, and at the time of purchase, and relied on this misleading, false, and deceptive representation in purchasing the Wipes. Ms. Awad understood that "biodegradable" meant that the Wipes Product would break down naturally in the environment within a reasonably short period of time under customary disposal conditions, i.e., throwing them in her household garbage. But the Wipes Product Ms. Awad purchased is not completely biodegradable under customary disposal conditions because landfills do not present the conditions necessary for biodegradation within a reasonably short period of time. The biodegradability of the Wipes Product was material to Ms. Awad, and had she known that Wipes would not biodegrade upon customary disposal, e.g., disposal in her household garbage, she would not have purchased the Wipes or would have paid significantly less for them.

8. Defendant Boots Retail USA Inc. is a Delaware corporation with its principal place of business in Deerfield, Illinois. Defendant Boots Retail USA Inc. owns and operates the No. 7 Beauty brand. Upon information and belief, Defendant manufactures, markets, sells, and distributes the Wipes Products throughout the United States and the State of New York. Defendant sold the Wipes Products with the aforementioned representations during the class period.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of the proposed class exceed $5,000,000.00, exclusive of interests and costs, there are over 100 members of the putative class, and Plaintiffs, as well as many members of the proposed class, is a citizen of a state different from Defendant.

10. This Court has personal jurisdiction over Defendant. Defendant does business in New York and has sufficient minimum contacts with this state, including within this District, and/or has otherwise intentionally availed itself of the New York consumer market through the promotion, marketing, and sale of its products to residents within this District and throughout New York. Additionally, Plaintiffs purchased the Wipes Products in New York.

11. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff Cathy Rosa resides in and purchased Defendant's Wipes Products in this District. Moreover, Defendant distributed, advertised, and sold the Wipes Products to the members of the Class, which is the subject of the present complaint, in this District.

**GENERAL ALLEGATIONS**

12. Defendant's labeling represents that its Wipes Products are "biodegradable." *See* Figures 3 and 4, below and next page.




**Figure 3**




**Figure 4**

13. Defendant adds a small asterisk to these unqualified biodegradable claims, which requires consumers to turn around the package to the small print in the back. On the back of the Biodegradable Cleansing Wipes, Defendant represents that they are "Tested to be biodegradable including landfill." *See* Figure 5, next page.




**Figure 5**

14. A second asterisk also accompanies this claim, which in small letters at the very bottom of the packaging states that the representation is based on EN13432 and ASTM D5511-18 testing. *See* Figure 6, next page.




**Figure 6**

15. A small asterisk likewise accompanies the unqualified biodegradable claim on Defendant's Biodegradable Makeup Removing Wipes, which states that the biodegradable representation is based on EN13432 and ASTM D5511-18 testing in small print on the back of the packaging. *See* Figure 7, next page.




**Figure 7**

16. The Wipes Products are sold in a variety of outlets, including but not limited to Walgreens, Amazon.com, and Walmart.

17. Reasonable consumers understand Defendant's unqualified "biodegradable" representation to mean that the Wipes will biodegrade in a reasonably short period of time after disposal in their household trash, as Defendant directs in all capitals on the back of its packaging. *See* Figures 8 and 9, next page.




**Figure 8**




**Figure 9**

18. Defendant's labeling and advertising puts forth a straightforward, material message: the Wipes Products are biodegradable after they are customarily disposed of "with household waste."

19. Unbeknownst to consumers, the biodegradable representation is false and misleading because the Wipes Products will not completely decompose within a reasonably short period of time after customary disposal. This is because when the Wipes Products are thrown in the trash, where the reasonable consumer customarily disposes their products, the Wipes Products ultimately end up in landfills or incinerators. Contrary to Defendant's packaging representations, landfills do not have the conditions necessary to allow the Wipes Products to completely decompose within a reasonable time period. *See e.g.*, *Ass'n of Nat. Advertisers, Inc. v. Lungren*, 809 F. Supp. 747, 758 (N.D. Cal. 1992), *aff'd*, 44 F.3d 726 (9th Cir. 1994) ("The claim that a product is 'biodegradable, if composted' might be truthful, but if the product is only disposed in landfills, the alleged environmental attribute actually produces no benefit.").

20. The Federal Trade Commission (the "FTC") addresses this exact deceptive practice in its Green Guides, which were created by the FTC to help companies avoid making misleading and deceptive claims about the environmental impacts of their products. Specifically, under 16 C.F.R. § 260.8(c) of the Green Guides, the FTC states:

> It is deceptive to make an unqualified degradable claim for items entering the solid waste stream if the items do not completely decompose within one year after customary disposal. ***Unqualified degradable claims for items that are customarily disposed in landfills, incinerators, and recycling facilities are deceptive because these locations do not present conditions in which complete decomposition will occur within one year.***

*Id.* (emphasis added).

21. The FTC requires companies to "clearly and prominently" qualify degradable claims to "avoid deception about: (1) the product's or package's ability to degrade in the

environment where it is customarily disposed; and (2) the rate and extent of degradation." *Id.* § 260.8(d).

22. Accordingly, the FTC and its Green Guides support Plaintiffs' allegations that they and other consumers have been misled by Defendant's unqualified biodegradable representations.

23. As discussed in more detail below, landfills do not have the conditions necessary to allow the Wipes to decompose within a reasonably short period of time. Therefore, per the FTC's Green Guides, the biodegradable representations should have been qualified to avoid consumer deception.

24. When the Wipes are thrown into a consumer's household trash, they will typically end up in a municipal solid waste landfill, which has an anaerobic environment, meaning the waste is buried rather than being exposed to air. Such conditions mummify the waste and prevent it from biodegrading within a reasonable amount of time, if at all.

25. "This is not an ideal environment for biodegradation, and that's exactly how landfills are supposed to work. Landfills are designed to bury trash – not to break it down. In fact, excavations of landfills have uncovered newspapers still legible after 40 years, 25 year-old heads of lettuce in near pristine condition, and decades old packs of hot dogs ready for the grill."[1]

26. "Decomposition at most sites extends over a period of 20 years or more, largely due to low moisture input and poor distribution of moisture within a landfill. . . . Although landfills are currently designed for minimum rates of biodegradation by retarding moisture

---

[1] *Ask Eartha: Why we don't want our trash to 'break down' in the landfill?*, High Country Conservation Center, https://highcountryconservation.org/ask-eartha-why-we-dont-want-our-trash-to-break-down-in-the-landfill/ (last visited Jan. 12, 2026).

influx, it is important to consider designs to promote faster biodegradation, both for commercial gas recovery and faster return of landfill sites to alternative land uses."[2]

27. This is the very reason the FTC has previously challenged biodegradable representations similar to those challenged in this case, noting that "[c]onsumers likely interpret unqualified degradable claims to mean that the entire product or package will completely decompose into elements found in nature within a reasonably short period of time after customary disposal. For items entering the solid waste stream, consumers likely interpret unqualified degradable claims to mean that the item will completely decompose within one year after customary disposal." *In the Matter of Down to Earth Designs, Inc., A Corp.*, 2014 WL 253521, at *3 (F.T.C. Jan. 17, 2014) (citing 16 C.F.R. § 260.8(b),(c)).[3]

28. In that Complaint, the FTC noted that the products were not biodegradable, despite the packaging representations that they were, because "[l]andfills, incinerators, and recycling facilities do not present conditions for biodegradation or composting within a reasonably short period of time." *Id.*

29. Defendant's EN13432 and ASTM D5511-18 testing claims are also misleading because these tests do not accurately simulate whether a product will biodegrade within a reasonably short period of time in landfill conditions.

---

[2] Jean E. Bogner et al., *Modified Biochemical Methane Potential (BMP) Assays to Assess Biodegradation Potential of Landfilled Refuse* (1989) (funded by U.S. Dep't of Energy).

[3] The FTC and the party named in the Complaint ultimately reached a settlement. *See FTC Approves Final Order Settling Charges that Down to Earth Designs, Inc. Made Deceptive Environmental Claims for its Diapers and Related Products Made Deceptive Environmental Claims for its Diapers and Related Products*, FTC (Mar. 19, 2014), https://www.ftc.gov/news-events/news/press-releases/2014/03/ftc-approves-final-order-settling-charges-down-earth-designs-inc-made-deceptive-environmental-claims. Nonetheless, the Complaint demonstrates that even the FTC has recognized that biodegradable representations without disclaimers can mislead consumers.

30. The European standard EN 13432 defines the minimum requirements packaging has to meet in order to be processed by ***industrial composting***.[4] Defendant does not direct the consumer to dispose of the Wipes Products in the manner required to allow it to reach an industrial composting facility, nor would the reasonable consumer know that the packaging would need to be disposed of in a specific way in order for it to be "biodegradable." Rather, if a consumer even notices Defendant's qualifying language, that language directs consumers to simply toss the Wipes in their household trash. *See* Figures 8 and 9.

31. Additionally, many densely populated counties, including those in New York, lack sufficient access to composting facilities.[5] Thus, even if a reasonable consumers (1) noticed the disclaimers; (2) were sufficiently informed in biodegradability testing procedures to know what the disclaimers meant; and (3) ignored Defendant's instructions to dispose of the wipes with their household waste, they likely would not have access to a facility where they could appropriately dispose of the wipes.

32. ASTM testing is also flawed. "Even if standard ISO and ASTM methods are defined for the assessment of these materials, there are not current specifications that define mineralization rates that a plastic should reach in order to be labeled as 'biodegradable in anaerobic digestion' or 'biodegradable in landfill'. This situation makes a comparison between materials

[4] Bioplastics, *Background: EN 13432 Certified Bioplastics Performance in Industrial Composting* 2 (2015), https://docs.european-bioplastics.org/publications/bp/EUBP_BP_En_13432.pdf (emphasis added).
[5] Sustainable Packaging Coalition, *Understanding the Role of Compostable Packaging in North America* (2021), https://sustainablepackaging.org/wp-content/uploads/2023/07/UnderstandingCompostablePackagingGuide.pdf.

difficult and prevents a complete understanding of how they will react in real waste management conditions."[6]

33. Even if these tests did accurately simulate landfill conditions, which is contested, the exact purpose of 16 C.F.R. § 260.8(c) of the FTC's Green Guides is to point out that "landfills . . . ***do not*** present conditions in which complete decomposition will occur within one year." Defendant's biodegradable representations are misleading for deceptively marketing its Wipes Products as biodegradable when they end up in landfill conditions, which a reasonable consumer would expect to mean that it will completely decompose within a reasonably short period of time. (Emphasis added).

34. Defendant's deceptive misrepresentations capitalize on environmentally conscious consumers' desire to buy products that are biodegradable in order to contribute to minimizing their environmental footprint. In a recent article published by the Journal of the Agricultural and Applied Economics Association, the authors conducted a study to evaluate whether representations that a product's packaging was biodegradable influenced consumer's willingness to pay. The study found that consumers are willing to pay a positive price premium for biodegradable plastic packaging compared to conventional plastic packaging.[7]

35. The willingness to pay a price premium for eco-friendly products reaches a huge portion of the market. The National Retail Federation reported that in recent surveys, half to two-thirds of consumers say they will pay more for sustainable products.[8]

---

[6] Xochitl Quecholac-Piña, et al., *Degradation of Plastics under Anaerobic Conditions: A Short Review*, Polymers, Jan. 2020, at 11.

[7] Wei Yang, et al., *Do Consumers Value Biodegradable Plastic Packaging?*, 4 J. Agric. & Applied Econ. Ass'n 363, 375 (2025), https://onlinelibrary.wiley.com/doi/epdf/10.1002/jaa2.70020.

[8] Scott Case, *Consumers care about sustainability — but will they pay more?*, Nat'l Retail Fed'n (Apr. 10, 2023), https://nrf.com/blog/consumers-care-about-sustainability-will-they-pay-more

36. Thus, Defendant is able to profit directly as a result of its false and misleading representation that the Wipes are biodegradable.

## CLASS ALLEGATIONS

37. **Nationwide Class Definition:** Plaintiffs seek to represent a class of similarly situated individuals defined as all persons in the United States who purchased Defendant's Wipes labeled with a biodegradable representation on the front packaging (the "Nationwide Class").

38. **New York Subclass Definition:** Plaintiffs seek to represent a subclass consisting of similarly situated individuals defined as all persons who purchased Defendant's Wipes labeled with a biodegradable representation on the front packaging in the State of New York during the relevant statute of limitations period (the "New York Subclass").

39. The Nationwide Class and New York Subclass are collectively referred to as "Classes." Subject to additional information obtained through discovery and further investigation, the above-described Classes may be modified or narrowed as appropriate.

40. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** The members of the Classes are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiffs reasonably estimate that there are thousands of members in the Classes. Although the precise number of Class Members is unknown to Plaintiffs, the true number of Class Members is known by Defendant and may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

---

(referencing studies conducted by IBM and the Baker Retailing Center at the University of Pennsylvania).

41. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** A well-defined community of interest exists in the questions of law and fact involved in this case. Questions of law and fact common to the Members of the Classes that predominate over questions that may affect individual Members of the Classes include:

(a) whether the marketing, labeling, and advertisements for the Wipes were false and misleading;

(b) whether Defendant's conduct was unfair and/or deceptive; and

(c) whether Plaintiffs and the Classes sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

42. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiffs' claims are typical of those of the Classes because Plaintiffs, like all Members of the Classes, were exposed to Defendant's false and misleading marketing, purchased the Wipes in reliance on Defendant's false and misleading representations, and suffered a loss as a result of that purchase.

43. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiffs are able to fairly and adequately represent and protect the interests of the Classes. Neither Plaintiffs nor their counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Classes. Plaintiffs have raised viable common-law and statutory claims of the type reasonably expected to be raised by Members of the Classes and will vigorously pursue those claims.

44. **Superiority (Fed. R. Civ. P. 23(b)(3)):** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members. Each

individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
**Violation Of New York's Gen. Bus. Law § 349**
**(On Behalf Of The New York Subclass)**

45. Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

46. Plaintiffs bring this claim individually and on behalf of the Members of the proposed New York Subclass against Defendant.

47. Defendant has violated, and continues to violate, § 349 of the New York General Business Law ("GBL"), which makes deceptive acts and practices unlawful. As a direct and proximate result of Defendant's violation of § 349, Plaintiffs and other members of the New York Subclass have suffered damages in an amount to be determined at trial.

48. Defendant committed deceptive acts and practices by employing false, misleading, and deceptive representations and/or omissions about the biodegradability of its Wipes Products to mislead consumers into believing the Wipes will completely decompose within a reasonably short period of time after customary disposal under landfill conditions.

49. Plaintiffs have standing to pursue this claim because they have suffered an injury-in-fact and have lost money or property as a result of Defendant's deceptive acts and practices. Specifically, Plaintiffs each purchased the Wipes Products for personal use as environmentally-conscious consumers. In doing so, Plaintiffs relied upon Defendant's false, misleading, and deceptive representations that the Wipes Products were biodegradable compared to similar competitor products. Plaintiffs spent money in the transaction that they otherwise would not have spent had they known the truth about Defendant's advertising claims.

50. Defendant's deceptive acts and practices were directed at consumers, and Defendant's labeling induced Plaintiffs to buy the Wipes Products.

51. Defendant packaged the Wipes Products with labeling containing misleading representations willfully, wantonly, and with reckless disregard for the truth.

52. Defendant's deceptive acts and practices are misleading in a material way because, as alleged above and herein, they violate consumers' reasonable expectations. By falsely representing that the Wipes Products are biodegradable without a disclaimer, Defendant proves that the biodegradability of plastic waste is material to consumers. If Defendant had advertised its Wipes Products truthfully and in a non-misleading fashion, Plaintiffs and other New York Subclass Members would not have purchased the Wipes Products or would not have paid as much as they did for them.

53. Plaintiffs and the New York Subclass members have been injured by their purchase of the Wipes Products, which were worth less than what they bargained and/or paid for, and which they selected over other products that may have been truthfully marketed.

54. Plaintiffs and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that: (i) they would not have purchased the

Wipes Products had they known the truth; and (ii) they overpaid for the Wipes Products on account of the misrepresentations and omissions, as described herein. As a result, Plaintiffs and New York Subclass members have been damaged in an amount to be determined at trial.

55. On behalf of themselves and other members of the New York Subclass, Plaintiffs seek to enjoin Defendant's unlawful acts and practices described herein, to recover actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

**COUNT II**

**Violation Of New York's Gen. Bus. Law § 350**

**(On Behalf Of The New York Subclass)**

56. Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

57. Plaintiffs bring this claim individually and on behalf of the members of the proposed New York Subclass against Defendant.

58. GBL § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service is hereby declared unlawful." GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity …. if advertising is misleading in a material respect."

59. Plaintiffs and the members of the New York Subclass are consumers who purchased Defendant's Wipes Products in New York.

60. As a seller of goods to the consuming public, Defendant is engaged in the conduct of business, trade, or commerce within the intended ambit of § 350.

61. When determining whether advertising is misleading, GBL § 350-a requires not only taking into account "representations made by statement …. but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual" (emphasis added).

62. As alleged above, Defendant engaged in a campaign of false advertising with regard to the biodegradability of its Wipes Products to mislead consumers into believing the Wipes Products they purchased would be biodegradable within a reasonably short period of time after customary disposal.

63. Defendant's labeling and advertisement of the Wipes Products was false and misleading in a material way. Specifically, Defendant advertised the Wipes as "biodegradable" when they are unable to biodegrade in a reasonably short time period under landfill conditions.

64. Plaintiffs understood Defendant's misrepresentations to mean that the Wipes would biodegrade within a reasonably short period of time when customarily disposed of in their household trash.

65. Defendant's deceptive acts and practices are also misleading in a material way because, as alleged above and herein, they violate consumers' reasonable expectations when purchasing a product that is represented to be biodegradable. By ignoring regulatory requirements and guidance to make its misleading representations, Defendant abandoned customary market conditions resulting in its Wipes Products appearing superior to other wipes products. If Defendant had advertised its Wipes Products truthfully and in a non-misleading fashion, Plaintiffs and other New York Subclass Members would not have purchased the Wipes Products or would not have paid as much as they did for it.

66. Defendant's deceptive acts and practices were directed at consumers.

67. Defendant's conduct led to direct, foreseeable, and proximate injury to Plaintiffs and New York Subclass Members.

68. As a result of this misrepresentation, Plaintiffs and New York Subclass members have suffered economic injury because: (i) they would not have purchased the Wipes Products had they known the truth; and (ii) they overpaid for the Wipes Products on account of the misrepresentations and omissions, as described herein. As a result, Plaintiff and New York Subclass members have been damaged either in the full amount of the purchase price of the Wipes Products or in the difference in value between the Products as warranted and the Products as actually sold.

69. By reason of the foregoing and as a result of Defendant's conduct, Plaintiffs and New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

**COUNT III**
**Breach of Express Warranty**
**(On Behalf Of The Classes)**

70. Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

71. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

72. Defendant, as the manufacturer, marketer, distributor, and/or seller, expressly warranted that the Wipes Products were biodegradable in landfill conditions.

73. Defendant's representations and warranties were part of the description of the goods and the bargain upon which the Wipes Products were offered for sale and purchased by Plaintiffs and members of the Classes.

74. However, the Wipes Products do not conform to Defendant's representations and warranties because landfills do not present conditions necessary for biodegradation within a reasonably short period of time. By falsely representing the Wipes in this way, Defendant breached express warranties.

75. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and members of the Classes have been injured and harmed in an amount to be proven at trial. Had Plaintiffs and members of the Classes known the Wipes Products were not in fact "biodegradable," they would not have purchased the Products, or would have paid substantially less for them.

76. Prior to filing the initial complaint in this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiffs that complied in all respects with U.C.C. §§ 2-313 and 2-607. A true and correct copy of this letter is attached hereto as **Exhibit A.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative of the Classes and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

(b) For an order declaring Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest in all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For an order awarding Plaintiffs and the Classes their reasonable attorney's fees and expenses and costs of suit.

**JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated: April 28, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *<u>/s/ Philip L. Fraietta</u>*

Philip L. Fraietta
Matthew A. Girardi
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com
mgirardi@bursor.com

*Attorneys for Plaintiffs*